**GENERAL MOTORS CORPORATION, a Delaware corporation, and Frank W. Diver, Inc., a Delaware corporation, t/a Diver Chevrolet, Defendants Below, Appellants,**

v.

**Elsie B. WOLHAR and Robert Wolhar, Plaintiffs Below, Appellees.**

No. 330, 1996.

Supreme Court of Delaware.

Submitted: October 8, 1996.

Decided: October 11, 1996.

Opinion: December 6, 1996.

Somers S. Price, Jr. and Todd L. Goodman of Potter, Anderson & Corroon, Wilmington, for appellants.

Lisa C. McLaughlin and Robert S. Goldman of Phillips, Goldman & Spence, P.A., Wilmington, for appellees.

Before WALSH, HOLLAND, and BERGER, JJ.

HOLLAND, Justice:

The plaintiffs-appellees, Elsie B. and Robert Wolhar, instituted a products liability lawsuit alleging negligence and breach of warranty against the defendants-appellants, General Motors Corporation ("General Motors") and Frank W. Diver, Inc. ("Diver").[1] The complaint alleged that on April 9, 1991, when Mrs. Wolhar was operating the plaintiffs' 1987 Chevrolet Blazer, the brakes failed to operate properly, causing her to sustain serious physical injury during a collision with another motor vehicle. The plaintiffs obtained leave of the Superior Court to file an amended complaint to include additional allegations of negligence in the design and manufacture of the seat in the 1987 Chevrolet Blazer.[2]

At issue in this expedited interlocutory appeal is the Superior Court's decision to strike the defendants ninth affirmative defense to the amended complaint. That affirmative defense addressed the allegation of negligent design of the seat back. It attributed Mrs. Wolhar's injuries to the supervening conduct of her failure to wear a seat belt.[3] The plaintiffs moved to strike the ninth affirmative defense on the basis that a Delaware statute precludes evidence of failure to wear a seat belt in any civil action. 21 Del.C. § 4801 et seq. ("Seat Belt Safety Act").

In granting the plaintiffs' motion to strike the ninth affirmative defense, the Superior Court held that the statutory bar in the Seat Belt Safety Act could not be applied retroactively to this case. Nevertheless, the Superior Court concluded that evidence regarding Mrs. Wolhar's non-use of her seat belt was inadmissible pursuant to the common law. In reaching that conclusion, it relied upon the holding in *Lipscomb v. Diamiani*, Del.Super., 226 A.2d 914 (1967).

1. The Court announced its decision by order on October 11, 1996. This opinion sets forth the basis for that decision.

2. Separate amendments to the original complaint are not at issue in this appeal.

3. The term "seat belt" is used in this opinion. Other courts have noted that "safety belt" may

be more appropriate. *Swajian v. General Motors Corp.*, R.I.Supr., 559 A.2d 1041, 1042 n. 1 (1989). We agree with that observation. Our use of the term "seat belt" is intended to encompass any "seat belt system, as defined by the applicable federal motor vehicle safety standards." 21 Del.C. § 4802(a)(2).

This Court has determined the Superior Court's decision that the Seat Belt Safety Act could not be applied retroactively was correct. We have also concluded, however, the holding in *Lipscomb* is distinguishable from the present action and that seat belt evidence is admissible for limited purposes in defending against the plaintiffs' allegation of negligent seat design. Therefore, the Superior Court's interlocutory judgment striking the ninth affirmative defense must be reversed.

*Seat Belt Safety Act*
*Substantive Rights Affected*
*No Retroactive Application*

■ The Seat Belt Safety Act became effective more than six months after the accident giving rise to this litigation. The Superior Court held that the Seat Belt Safety Act and, in particular, the evidentiary bar does not apply retroactively. 21 *Del.C.* § 4802(i).[4] That holding decided a question of law. Therefore, the applicable standard of appellate review is *de novo* or plenary. *Grand Ventures, Inc. v. Whaley,* Del.Supr., 632 A.2d 63, 66 (1993); *see also Moses v. Board of Educ.,* Del.Supr., 602 A.2d 61, 63 (1991).

■ Generally, in the absence of language demonstrating the legislature's intent to the contrary, a statute will not be given retroactive application if it affects substantive rights. *Comer v. Getty Oil Co.,* Del.Super., 438 A.2d 1239, 1242 (1981); *see also Chrysler Corp. v. State,* Del.Supr., 457 A.2d 345, 351 (1983). The Seat Belt Safety Act does not indicate that the General Assembly intended that it be applied retroactively. Nevertheless, the Wolhars contend that the Seat Belt Safety Act applies to this matter and any other action tried after its effective date, January 1, 1992, because it is an evidentiary or procedural statute.

The Superior Court concluded that, although the Seat Belt Safety Act relates to the admissibility of evidence at trial, it affects the substantive rights of litigants. Other courts have held that similar statutes constitute rules of substantive law. *See, e.g., Gardner v. Chrysler Corp.,* 89 F.3d 729, 736 (10th Cir.1996); *Potts v. Benjamin,* 882 F.2d 1320, 1324 (8th Cir.1989); *see also Barron v. Ford Motor Co. of Canada Ltd.,* 965 F.2d 195, 200 (7th Cir.), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992); *Kolbeck v. General Motors Corp.,* 745 F.Supp. 288, 294 (E.D.Pa.1990), *aff'd,* 950 F.2d 722 (3d Cir.1991), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, ·121 L.Ed.2d 136 (1992). We agree. The Superior Court properly determined that the Delaware Seat Belt Safety Act cannot be applied retroactively to this case.

*Crashworthiness*
*Defect in Design*

■ The amended complaint alleged that Mrs. Wolhar sustained injuries that were proximately caused by the negligent design of the seat in her car. The nature of those allegations challenges the "crashworthiness" of her 1987 Chevrolet Blazer. The term "crashworthiness" relates to the protection that a vehicle affords its occupants against injuries resulting from accidents.

In a crashworthiness claim, a plaintiff does not seek compensation for injuries received from the initial collision between the vehicle and another object. Instead, the plaintiff seeks compensation for injuries that result from the "second collision" which occurs when the plaintiff strikes the interior of the vehicle or is thrown from the vehicle. *LaHue v. General Motors Corp.,* 716 F.Supp. 407, 409 n. 1 (W.D.Mo.1989). Second collision injuries are often referred to as "enhanced injuries." *See Larsen v. General Motors Corp.,* 391 F.2d 495, 502 (8th Cir.1968); *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 708 n. 4 (1987); *see also DePaepe v. General Motors Corp.,* 33 F.3d 737, 742–43 (7th Cir.1994) (discussing divisibility of injuries). Thus, in a crashworthiness claim, the plaintiffs seek compensation

---

4. 21 *Del.C.* § 4802(i) states:

Failure to wear an occupant protection system shall not be considered as evidence of either comparative or contributory negligence in any civil suit or insurance claim adjudication arising out of any motor vehicle accident, nor shall failure to wear an occupant protection system be admissible as evidence in the trial of any civil action or insurance claim adjudication.

for injuries over and above the injury that would have occurred as a result of the impact of collision, absent the vehicle's alleged negligently defective design.

### The Parties' Other Contentions

The plaintiffs contended that, as a result of an alleged design defect in the seating system of her 1987 Chevrolet Blazer, Mrs. Wolhar suffered enhanced injuries after the initial impact between her vehicle and another vehicle because of a seat failure or collapse. General Motors seeks to admit evidence that the use of a seat belt was an essential component of its over-all safety design. General Motors' ninth affirmative defense asserted that Mrs. Wolhar's enhanced injuries resulted from her movement, after her vehicle collided with the vehicle in front of her, because she was not wearing a seat belt. Thus, General Motors argues that the enhanced injuries suffered by Mrs. Wolhar were not proximately caused by an alleged defect in the vehicle's design.

### Lipscomb v. Diamiani Distinguishable Precedent

In granting the plaintiffs' motion to strike the ninth affirmative defense, the Superior Court stated:

I find the facts of this case to be controlled by this Court's decision in Lipscomb v. Diamiani, Del.Super., 226 A.2d 914, 918 (1967), and for the reasons therein stated, will not permit GM to introduce into evidence the fact that Mrs. Wolhar was not wearing her seatbelt for the purpose of proving supervening cause.

Lipscomb was a traditional automobile tort action between the occupants of two motor vehicles. The question of whether the plaintiffs' automobile was negligently designed by the manufacturer, in a manner that proximately caused enhanced injuries, was not an issue in Lipscomb. In fact, the first "crashworthiness" case is generally considered to

be Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968). Larsen was decided one year after Lipscomb v. Diamiani, Del.Super., 226 A.2d 914 (1967).

At issue in Lipscomb was whether the defendant driver's negligence was the proximate cause of the accident and consequential injuries sustained by the plaintiff. In Lipscomb, the defendant sought to admit evidence that the plaintiff was not wearing a seat belt to establish that the plaintiff had breached a common-law duty of due care and was therefore contributorily negligent. The Superior Court held that, because the question of automobile safety is comprehensively covered in Delaware statutory law, the legislative forum is the proper place to adopt a duty to wear a seat belt. Lipscomb v. Diamiani, 226 A.2d at 918.

In this case, General Motors does not seek to admit seat belt evidence for the purpose of establishing and then demonstrating Mrs. Wolhar's breach of a common-law duty of care that requires a seat belt to be worn. General Motor wants to admit evidence of seat belt non-use to establish that its seat design did not proximately cause the injuries to Mrs. Wolhar. Consequently, the concerns expressed by the Superior Court in Lipscomb about creating a new common-law duty to wear seat belts, when plaintiffs bring a traditional negligence action against defendant motor vehicle drivers, are not implicated in a plaintiffs' crashworthiness claim against a manufacturer for enhanced injuries attributed to a negligently defective design.

### Other Jurisdictions Seat Belt Evidence

■ "There is a sharp split of authority amongst courts that have considered the admissibility of safety-belt evidence."[5] Swajian v. General Motors Corp., R.I.Supr., 559 A.2d 1041, 1043 (1989). The Swajian Court set forth numerous cases and jurisdictions

---

5. See Robert F. Cochran, Jr., New Seat Belt Defense Issues: The Impact of Air Bags and Mandatory Seat Belt Use Statutes on the Seat Belt Defense, and the Basis of Damage Reduction Under the Seat Belt Defense, 73 MINN.L.REV. 1369 (1989); Leonard C. Schwartz, The Seat Belt Defense and Mandatory Seat Belt Usage: Law, Ethics, and Economics, 24 IDAHO L.REV. 275 (1988); David A. Westernberg, Buckle Up or Pay: The Emerging Safety Belt Defense, 20 SUFFOLK U.L.REV. 867 (1986); Nancy N. Casbeer, Comment, The Use of the Seat Belt Defense in Crashworthiness Cases, 40 BAYLOR L.REV. 551 (1988).

which have found seat belt non-use admissible. *Id.* at 1043–44. As another court has stated:

> Enough has been written about the "seat-belt defense" to show the body of law related to it is split, fragmented and changing. It varies in time, place, rationale, effect and implementation. No doubt the law varies so much because the theory does not fit neatly into traditional tort doctrines of negligence (including duty, breach of duty and causation), strict liability, contributory negligence, mitigation of damages, avoidance of consequences, and comparative fault.

*LaHue v. General Motors Corp.*, 716 F.Supp. 407, 410 (W.D.Mo.1989). This Court has concluded that several cases from other jurisdictions are instructive with regard to the admissibility of seat belt evidence to defend against a claim for negligently defective seat design or crashworthiness.

In one of those cases, with a factual scenario similar to this proceeding, the plaintiff alleged that she was injured as a result of a seat back failure. *Gardner v. Chrysler Corp.*, 89 F.3d 729, 732 (10th Cir.1996). The manufacturer contended that the plaintiff's unrestrained body caused the seat back to yield. *Id.* at 733. The trial court admitted evidence that a seat belt was included in the plaintiff's vehicle as part of its overall design. *Id.* at 734–35. After a defense verdict, the plaintiff alleged on appeal that the trial court improperly permitted the admission of seat belt evidence in violation of both the Kansas seat belt statute and the common law.[6] *Id.* at 733.

The United States Court of Appeals for the Tenth Circuit rejected those arguments. *Id.* at 736. It held that in a crashworthiness case, where a plaintiff is attacking the design of the vehicle, the manufacturer may not be foreclosed from admitting evidence that a seat belt was part of the design of the occupant restraint system of the vehicle. *Id.* at 736–37. Because such evidence was relevant

to the design of the vehicle, and not to comparative negligence or to mitigation of damages, the court held that neither the seat belt statute nor common law precluded its admission. *Id.*

Another case involved plaintiffs who were ejected from their vehicle during an accident. *MacDonald v. General Motors Corp.*, 784 F.Supp. 486, 489 (M.D.Tenn.1992). In *Mac-Donald*, the plaintiffs contended that the accident was caused by the allegedly defective and unreasonably dangerous condition of their vehicle. *Id.* at 490. The defendant manufacturer raised the defenses of contributory negligence, assumption of the risk, failure to mitigate damages, and lack of proximate causation due to the plaintiffs' failure to wear available seat belts. *Id.* The plaintiffs contended that all of those defenses asserted were barred by the Tennessee seat belt statute, which provided: "In no event shall failure to wear a safety belt be considered as contributory negligence, nor shall such failure to wear a safety belt be admissible as evidence in a trial of any civil action." *Id.* (quoting Tenn.Code Ann. § 55-9-604).

The court in *MacDonald* held that the Tennessee seat belt statute and Tennessee precedent prohibited the admission of the plaintiffs' failure to wear seat belts with regard to the defenses of contributory negligence, assumption of the risk, and failure to mitigate damages. *Id.* at 497–99. On the issue of proximate causation, however, the court held that evidence of seat belt non-use was admissible:

> When the question whether an injured person was not wearing a safety belt bears on what proximately caused the specific injuries, the court should read [the statute's] categorical exclusion of such evidence as qualified by [the statute's further declaration that it] is not to be construed as imposing strict liability.
>
> ... To prevent General Motors from introducing evidence that the Plaintiffs' injuries were the result of being thrown

---

6. The United States Court of Appeals for the Tenth Circuit addressed the admissibility of seat belt evidence in the context of a Kansas statute which provided: "Evidence of failure of any person to use a safety belt shall not be admissible in

any action for the purpose of determining any aspect of comparative negligence or mitigation of damages." *Gardner v. Chrysler Corp.*, 89 F.3d at 733 (quoting Kan.Stat.Ann. § 8–2504(c)).

from the van would be taking a step toward the imposition of absolute liability. *Id.* at 499.

In a third similar case, the plaintiff brought a crashworthiness claim alleging that she suffered enhanced injuries due to the defective design of her vehicle's seats. *LaHue v. General Motors Corp.,* 716 F.Supp. 407, 409 (W.D.Mo.1989). The defendant manufacturer contended that seat belts were part of the design of the automobile and, that if plaintiff is permitted to introduce seat design evidence, the defendant should be permitted to use design evidence concerning the seat belt to defend the reasonableness of the vehicle's design. *Id.* at 417. The defendant manufacturer also argued that it should be permitted to show that plaintiff's injuries arose entirely or in part from, *inter alia,* the failure to wear a seat belt. *Id.* at 416.

The court held that seat belt evidence was not admissible for the purposes of establishing contributory negligence, assumption of the risk, or failure to mitigate damages based upon the prevailing seat belt statute [7] and a survey of common law from other jurisdictions. *Id.* at 410–16. With respect to the reasonableness of the vehicle's design, however, the *LaHue* opinion held that seat belt evidence was admissible:

> Defendant argues that seat belts are part of the design of an automobile. Defendant urges that, if plaintiffs are permitted to use seat design evidence, defendant should be permitted to use design evidence concerning the seat-belt part of the car. The case law supports defendant's position that an automobile is a product which may be considered as a whole.

> .  .  .  .  .

> By its nature, the defective crashworthiness design theory of liability requires that the vehicle be considered as a whole. . . . Accordingly, the jury should consider the

vehicle's overall design, including safety features, in order to determine the crashworthiness issue, and, thus, whether the vehicle was defective in design.

*Id.* at 417 (quoting *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 719–20 (1987) (citations omitted)). Additionally, with respect to the causation factor, the court also allowed the evidence of non-use:

> Even though plaintiff may not have had a duty to wear a seat belt, and even though contributory fault would not be relevant in a products liability action, a defendant may attempt to prove that the injuries were caused by something other than an alleged design defect. If evidence shows that all or part of the injury is attributable to something other than a design defect, the critical element of causation is missing. In that instance, a defendant is not, and should not be, liable for harm which that defendant did not cause by way of a design defect.

*Id.* at 416. The *ratio decidendi* of *MacDonald, Gardner,* and *LaHue* are persuasive, with respect to the admissibility of seat belt evidence to: establish the reasonableness of a vehicle's over-all design for safety; and negate the proximate cause nexus between an alleged negligently defective seat design or crashworthiness claim and the plaintiffs' enhanced injuries.

### *Seat Belt Evidence Limited Admissibility*

■ The admission of evidence for a limited purpose is contemplated by Delaware Rules of Evidence 105.[8] It is generally accompanied by an appropriate instruction to the jury. The limited instruction can be given, upon request or *ex mero motu:* at the time the evidence is admitted; in the charge to the jury before deliberations; or on both occasions. *See* D.R.E. 105; *cf. Weber v. State,* Del.Supr., 547 A.2d 948 (1988).

---

7. The Missouri statute provided in part: "In any action to recover damages arising out of the ownership, common maintenance or operation of a motor vehicle, failure to wear a safety belt in violation of this section shall not be considered evidence of comparative negligence." *LaHue v. General Motors Corp.,* 716 F.Supp. at 410 (quoting Mo Rev.Stat. § 307.178.3).

8. D.R.E. 105 provides: "When evidence which is admissible as to 1 party or for 1 purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

In this case, General Motors wishes to admit seat belt evidence with regard to two limited issues. First, General Motors seeks to establish the reasonableness of its seat design. General Motors plans to do so by demonstrating that the use of a seat belt was an essential safety feature of the vehicle's over-all design. Second, General Motors seeks to negate the plaintiffs' contention that its design was the proximate cause of Mrs. Wolhar's enhanced injuries. General Motors intends to do so by demonstrating that Mrs. Wolhar's enhanced injuries were proximately caused due to her failure to occupy and operate the 1987 Chevrolet Blazer as designed for safety, *i.e.*, her failure to wear her seat belt.

The plaintiffs acknowledge that the existence of seat belts is admissible as evidence to demonstrate reasonableness of design. The plaintiffs object, however, to evidence or inferences that the seat belts were not used. General Motors contends it is not logical to admit evidence that it designed and provided seat belts for Mrs. Wolhar's safety without also permitting it to demonstrate her non-use of those seat belts was the supervening cause of her enhanced injuries.

Thus, General Motors seeks to assert Mrs. Wolhar's non-use of her seat belt as a complete defense to her action for negligent design. This Court considered an analogous contention in another case with regard to evidence of negligent parental supervision. *Sears, Roebuck & Co. v. Huang*, Del.Supr., 652 A.2d 568 (1995). In *Huang*, this Court held that although Delaware did not recognize a cause of action for negligent parental supervision, such evidence was admissible to establish that the parent's negligence was the supervening cause of a minor child's injuries that were alleged to have been proximately caused by the defendant. *Id.* at 574.

Once again, we note that *Lipscomb* is distinguishable. In *Lipscomb*, the Superior Court, without discussing proximate causation, only determined that evidence of non-use of seat belts was inadmissible by a driver defendant at common law to establish either the plaintiff's duty to wear a seat belt or the plaintiff's contributory negligence, assumption of the risk, or failure to mitigate damages. *Lipscomb v. Diamiani*, Del.Supr., 226 A.2d 914, 918 (1967). The duty to wear a seat belt has now been codified in the Seat Belt Safety Act. Concomitantly, evidence of "failure to wear an occupant protection system" was restricted significantly by the General Assembly. 21 *Del.C.* § 4803(i).

We are persuaded, however, that as a matter of common law, seat belt evidence is admissible in an action for negligently defective vehicular design for crashworthiness to disprove proximate causation, *i.e.*, to establish that seat belts were an integral part of the vehicle's over-all safety design and that the non-use of seat belts was the supervening cause of the plaintiff's enhanced injuries.[9] *Accord Sears, Roebuck & Co. v. Huang*, 652 A.2d at 574; *Duphily v. Delaware Elec. Co-op., Inc.*, Del.Supr., 662 A.2d 821, 828 (1995); *see also Straley v. United States*, 887 F.Supp. 728, 742–43 (D.N.J.1995). A plaintiff cannot recover unless it is established that the defendants' negligence was the proximate cause of the plaintiff's injuries. *Money v. Manville Corp. Asbestos Disease Compensation Trust Fund*, Del.Supr., 596 A.2d 1372, 1375 (1991); *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1097 (1991); *see also Huddell v. Levin*, 537 F.2d 726, 737–38, 740 (3d Cir.1976). Permitting a plaintiff to allege that she was injured by a defective vehicular design, while at the same time, preventing the defendant manufacturer from introducing evidence that the plaintiff's failure to use an essential safety device designed and supplied by the manufacturer was the supervening cause of the plaintiff's injuries, would essentially remove the issue of proximate cause in crashworthiness litigation. *MacDonald v. General Motors Corp.*, 784 F.Supp. at 499–500; *see also Duphily v. Delaware Elec. Co-op., Inc.*, 662 A.2d at 828–30.

### This Case

Accordingly, we hold that because the plaintiffs are alleging that Mrs. Wolhar's en-

---

**9.** Although the Seat Belt Safety Act is inapplicable to the present proceeding, both bases of this common-law holding are consistent with and will survive the enactment of that statute. *See*

*Gardner v. Chrysler Corp.*, 89 F.3d at 736–37; *MacDonald v. General Motors Corp.*, 784 F.Supp. at 499; *LaHue v. General Motors Corp.*, 716 F.Supp. at 416–18.

hanced injuries were proximately caused by a design defect in her vehicle, the defendants must be permitted to introduce seat belt evidence for the limited purposes of establishing: the safety design of the vehicle as a whole; and, that non-use of the seat belt, rather than the vehicle's seat design, was the supervening ·cause of those enhanced injuries.[10] *Accord MacDonald v. General Motors Corp.,* 784 F.Supp. 486, 499–500 (M.D.Tenn.1992); *LaHue v. General Motors Corp.,* 716 F.Supp. 407, 416–18 (W.D.Mo. 1989); *see Gardner v. Chrysler Corp.,* 89 F.3d 729 (10th Cir.1996); *see also DePaepe v. General Motors Corp.,* 33 F.3d 737 (7th Cir. 1994). Admitting evidence of seat belt non-use only with respect to proximate causation on the negligent design claim "may complicate the issue for the jury, but is by no means an insurmountable problem. Courts often admit evidence for one purpose that cannot be considered by the jury for other purposes." *MacDonald,* 784 F.Supp. at 500. The Superior Court should instruct the jury that the seat belt evidence may only be considered for the limited purpose of determining whether negligently defective vehicular

design was the proximate cause of Mrs. Wolhar's enhanced injuries.[11] *Id.;* D.R.E. 105; *see Sears, Roebuck & Co. v. Huang,* Del. Supr., 652 A.2d 568, 574 (1995); *see also Gardner v. Chrysler Corp.,* 89 F.3d at 736–37; *MacDonald v. General Motors Corp.,* 784 F.Supp. at 500; *LaHue v. General Motors Corp.,* 716 F.Supp. at 417.

### Conclusion

The interlocutory judgment of the Superior Court, holding that the Seat Belt Safety Act is inapplicable to this action, is affirmed. The interlocutory judgment of the Superior Court, striking the defendants' ninth affirmative defense, is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**10.** Such evidence is inadmissible on issues of contributory negligence, comparative negligence, assumption of the risk, or mitigation of damages.

**11.** General Motors has represented that the record reflects Mrs. Wolhar's enhanced injuries are, in fact, identifiable and divisible from those injuries she would have sustained if she had been wearing her seat belt. *See DePaepe v. General Motors Corp.,* 33 F.3d at 742–43.